(February 18, 1904.)

## HOLLISTER v. STATE.

[77 Pac. 339.]

CONDEMNATION PROCEEDINGS—DESCRIPTION OF PREMISES—UNCERTAINTY
OF COMPLAINT—UNCERTAINTY WAIVED BY DEFAULT.

1. In a condemnation proceeding, the allegations of the complaint must be in substantial compliance with the requirements of section 5216, Revised Statutes.

2. *Held, further,* that in ascertaining whether or not such requirements have been substantially met by the pleader, the same rules, methods, and manner of inquiry applicable in considering the sufficiency of any other pleading will be followed.

3. It is only where there is a failure to make a necessary or material allegation in the complaint that a defendant is justified in suffering a default and raising its insufficiency upon appeal; but where the allegation has been made, and he desires to attack it for uncertainty or ambiguity or the manner of making the allegation or language thereof, he must do so by a proper demurrer.

4. By default a defendant admits all the allegations of the complaint. He thereby admits equally the facts shown by a map annexed to and made a part of the complaint by reference as well as the allegations found in the respective paragraphs of the complaint.

(Syllabus by the court.)

APPEAL from District Court in and for Lincoln County. Honorable Kirtland I. Perky, Judge.

Condemnation action by H. L. Hollister against the state of Idaho, W. A. Clark and others. From a judgment by default against defendant Clark and certain other defendants, Clark appeals. Affirmed.

N. M. Ruick and Sullivan & Sullivan, for Appellant.

The paragraphs of the complaint upon which the controversy is based are set forth in the opinion, as also the statute under the provisions of which the cause is prosecuted. In general, jurisdiction is obtained by presenting a petition in conformity with the statute, and giving the notice required by

law. The petition should set forth by appropriate averments all the facts necessary to authorize the tribunal to act. (Lewis on Eminent Domain, secs. 602, 604.) Besides jurisdiction of the person of the defendant and the general subject matter of the action, it is necessary to the validity of a judgment that the court should have had jurisdiction of the precise question which its judgment assumes to decide, or of the particular remedy or relief which it assumes to grant. In other words, a judgment which passes upon the matters entirely outside the issue in the record is so far invalid. Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in the given case. To constitute this there are three essentials: 1. The court must have cognizance of the class of cases to which the one to be adjudged belongs; 2. The proper parties must be present; and 3. The point decided must be, in substance and effect, within the issue. (1 Black on Judgments, sec. 242.) As the plaintiff desires to build a dam in Snake river, the question arises, What was his procedure? It is evident that he decided the proper procedure to be under the statute relating to eminent domain. (Rev. Stats., secs. 5210-5229; Code, secs. 3841-3860.) As the legislature defines the interest which shall be taken or acquired, a less interest than that specified cannot be taken. Under a statute which provides that a fee shall vest on condemnation proceeding, an easement cannot be acquired. (Lewis on Eminent Domain, sec. 278; Ency. of Law, p. 1068.) The certainty in description is of the same nature as the certainty required in conveyance of land, so that a surveyor could go on the land and mark out the land designated. The taking of the land is in the nature of a conveyance from the owner, and he is entitled to know how much land is taken from him and the exact boundaries of what remains. (Mills on Eminent Domain, sec. 115; Lewis on Eminent Domain, secs. 348, 350.) The complaint nowhere alleges who are the owners of the lands on which the dams are to be built, and from which the rocks are to be removed. Neither does it set forth a sufficient or any description of the land upon which the dams are asked to be placed and from which rocks are to be removed. The only

allegation of ownership as to the defendants in default is made in reference to the tract that is described and sought to be taken for public use. An attempt to correct the omission, or to supply the want of an allegation of ownership as to the land upon which the dams are to be placed, etc., is made in the finding, where it is found that the defendant Clark et al. "have no right, title or interest in the premises sought to be taken for public use in the land on which dams are to be placed, or in the land at the point where the rocks are to be removed from the river-bed." Such finding is wholly unwarranted by anything contained in the complaint, and to that extent the court was without jurisdiction to make the order in relation to the dam and the rocks, and the judgment is to that extent void. Another objection to the judgment is that it rests on findings as to facts not in issue under the allegations of the complaint. Judgment must not go outside of the issues. (Black on Judgments, 2d ed., secs. 183, 242; *Munday v. Vail,* 34 N. J. L. 418, 421; *Husted v. Van Ness,* 158 N. Y. 104, 108, 52 N. E. 645; *Burus & Smith L. Co. v. Doyle,* 71 Conn. 742, 71 Am. St. Rep. 235, 43 Atl. 483; *Maddox v. Summerlin,* 92 Tex. 483, 488, 49 S. W. 1033, 50 S. W. 567; *Barnes v. C. M. & St. P. R. R.,* 122 U. S. 1, 7 Sup. Ct. Rep. 1043, 30 L. ed. 1128, 1132; *Lincoln Nat. Bank v. Virgin,* 36 Neb. 735, 737, 38 Am. St. Rep. 747, 55 N. W. 218; *Carter v. Gibson,* 47 Neb. 655, 659, 66 N. W. 631; *Rozenkranz v. Wagner,* 62 Cal. 151, 154; *Gregory v. Nelson,* 41 Cal. 278, cited in *Dutro v. Kennedy,* 9 Mont. 101, 105-107, 22 Pac. 763; *Harris v. Lloyd,* 11 Mont. 390, 405, 28 Am. St. Rep. 475, 28 Pac. 736; *Harkins v. Cooley,* 5 S. Dak. 227, 230, 58 N. W. 560; *Morenhout v. Barron,* 42 Cal. 591-605; *Devoe v. Devoe,* 51 Cal. 543; *Green v. Chandler,* 54 Cal. 626; *Murdock v. Clarke,* 59 Cal. 683; *Heinlem v. Heilbron,* 71 Cal. 557, 12 Pac. 673; *Gregory v. Nelson,* 41 Cal. 278, 284; *Mondran v. Goux,* 51 Cal. 151; *Sterling v. Hanson,* 1 Cal. 479; *Barron v. Frink,* 30 Cal. 486, 490; *Bryan v. Tormey,* 84 Cal. 126, 24 Pac. 319, 320; *Chetwood v. California Nat. Bank,* 113 Cal. 414, 45 Pac. 704, 707.) Default does not admit any fact which the complainant has not thought proper to allege. (Freeman on Judgments, sec. 538, p. 572; 1 Black on Judgments, secs. 84, 183; *Sigourney v. Zellerbach,* 55 Cal. 431.)

S. H. Hayes, for Respondent.

On examination of exhibit "A" it will be found that the dams are located and that the point where rocks are to be blown out designated. The description is followed in the judgment and in the final order of condemnation. This description in the judgment and final order is entirely adequate, and would be sufficient in a deed. The character of the improvements which respondent seeks to make is fully set forth in the complaint, so that the defendants could ascertain exactly how they would be affected by the proposed public use and the jury could tell what damage would be done. Appellant desired to put in an electric power plant, to divert the water to it by means of a tunnel and to make certain improvements in the river necessary for the purpose. One necessary improvement was the blowing out of certain rocks; another was the construction of the dams. The complaint gives due notice that these improvements in the river are to be made, and the exhibit, which is made a part of the complaint, by apt reference shows their location. The making of these improvements does not constitute a "taking" of land in the ordinary sense; and the best description of what it was desired to "take" was to set forth the character of the improvement contemplated. No particular form of words is necessary under the statute. If the defendant can ascertain from the pleading what the plaintiff's claim is, and if the pleading is clear enough so that the jury can assess the damages then the requirements of the law have been fulfilled. As a general proposition in all actions concerning real estate, the complaint must contain a description of the property sufficient to enable it to be located upon the ground. (*Whitney v. Buckman*, 19 Cal. 300; *Hildreth v. White*, 66 Cal. 549, 6 Pac. 454; *Phelan v. Poyoreno*, 74 Cal. 448 (455), 13 Pac. 681, 16 Pac. 241; *Doll v. Feller*, 16 Cal. 432; *Burnham v. Stone*, 101 Cal. 164 (170), 35 Pac. 627; *Glacier Mt. Silver M. Co. v. Willis*, 127 U. S. 471, 8 Sup. Ct. Rep. 1214, 32 L. ed. 172; *De Sepulveda v. Baugh*, 74 Cal. 468, 5 Am. St. Rep. 455, 16 Pac. 223; *In re Madera Irr. Dist.*, 92 Cal. 296 (329), 27 Am. St. Rep. 106, 28 Pac. 272, 675, 14 L. R. A. 755; *Rosenthal v. Mathews*, 100 Cal. 81,

34 Pac. 624; *Hihn v. Mangenberg,* 89 Cal. 268, 26 Pac. 968; *Thompson v. Connolly,* 42 Cal. 313; *St. Louis Oak Hill & C. Ry. Co. v. Fowler,* 113 Mo. 458, 20 S. W. 1069; *Riverside Co. v. Stockman,* 124 Cal. 222, 56 Pac. 1027; *Fudickar v. East Riverside Irr. Dist.,* 109 Cal. 29, 41 Pac. 1024; *Hovey v. Perkins,* 63 N. H. 516, 3 Atl. 923.) Where no demurrer is interposed to a complaint, mere defects in the manner of stating the facts relied on cannot be considered on appeal. If a cause of action be stated, though defectively, the complaint must be sustained notwithstanding a demurrer for ambiguity or uncertainty might have been well taken. (*Irish v. Sunderhaus,* 122 Cal. 308, 54 Pac. 1113; *Dennison v. Chapman,* 105 Cal. 447 (453), 39 Pac. 61; *Ryan v. Jacques,* 103 Cal. 280 (284), 37 Pac. 186; *Coss v. MacDonough,* 111 Cal. 662, 44 Pac. 325; *Palmer v. Lavigne,* 104 Cal. 30 (33), 37 Pac. 775; *Aulbach v. Dahler,* 4 Idaho, 654 (659), 43 Pac 322; Rev. Stats., sec. 4178; *San Joaquin Lumber Co. v. Welton,* 115 Cal. 1, 46 Pac. 735, 1057.) A judgment by default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one rendered after answer and contest. (*Last Chance Min. Co. v. Tyler Min. Co.,* 157 U. S. 683 (691), 15 Sup. Ct. Rep. 733, 39 L. ed. 859; *Himmelmann v. Spanagel,* 39 Cal. 401; Rev. Stats., sec. 5218.) The default is a waiver of any claim for damages. (Rev. Stats., sec. 5228; *City of Los Angeles v. Pomeroy,* 124 Cal. 597 (609), 57 Pac. 585; *In the Matter of Commissioners of Washington Park, Albany,* 52 N. Y. 131.) Findings of fact are waived by a failure to appear at the trial. (Rev. Stats., sec. 4408; *Himmelmann v. Spanagel,* 39 Cal. 401; *Hibernia Sav. etc. Soc. v. Clarke,* 110 Cal. 27 (32), 42 Pac. 425; *Murray v. Murray,* 115 Cal. 266, 56 Am. St. Rep. 97, 47 Pac. 37, 37 L. R. A. 626.)

AILSHIE J.—This is an appeal by the defendant, W. A. Clark, from a judgment made and entered on the fourth day of June, 1902, in an action wherein H. L. Hollister was plaintiff and the state of Idaho and W. A. Clark and others were defendants. From the judgment in that case and in another case, the state of Idaho appealed to this court (*Hollister v. State, ante,* p. 8, 71 Pac. 441), and the judgments of the lower

court were affirmed.  The appellant Clark allowed judgment
by default to be entered against him, and this appeal is from
such judgment and brings up the judgment-roll for our con-
sideration.  That portion of the judgment of which the ap-
pellant here complains is as follows: "And that plaintiff be,
and he is hereby, permitted to build dams as shown on exhibit
'A' attached to the complaint, a duplicate whereof is attached
to this judgment and hereby referred to and made a part hereof,
and also to remove rocks from the bed of Snake river at a
point marked 'Rapids to be blown out' on said exhibit 'A.' "

Counsel for appellant contend that the allegations of the
complaint were not sufficient to authorize the entry of this
portion of the judgment.  In order to fully illustrate the posi-
tion taken by the respective parties to this appeal, it will be
necessary to set forth the greater portion of the complaint, to-
gether with an exhibit attached thereto and by reference made
a part thereof.  All the allegations contained in the complaint
which in any way refer to the lands and premises to be con-
demned and sought to be taken by the plaintiffs are contained
in paragraphs 3, 4, 5 and 7 and exhibit "A" of plaintiff's com-
plaint, and they are each respectively as follows:

## "III.

"That the premises hereinafter described and sought to be
taken for public use, are claimed by the State of Idaho, and by
said State Board of Land Commissioners and the members
thereof, as a portion of section thirty-six, township seventeen,
east of range nine, south of Boise Meridian.

"That said section thirty-six was included in and is a por-
tion of the lands granted to the State of Idaho by the Act of
Congress of July 3, 1890.  That plaintiff is informed and be-
lieves and therefore alleges that the lands hereinafter described
and sought to be taken for public use are within the limits
of and are a portion of said section thirty-six, and that said
State of Idaho is the owner thereof.

## "IV.

"That the defendants, W. A. Clark, Mrs. Dewey (a widow),
E. L. Stone and J. A. Creighton claim to be the owners of said

lands hereinafter described and sought to be taken for public use, but plaintiff alleges that said defendants are not the owners thereof and have no rights thereto.

"V.

"That the premises sought to be taken for public use are situate in Lincoln County, State of Idaho, and are bounded and described as follows, to wit:

"Commencing at a point north, twelve degrees fifteen minutes, west from the southeast corner of section 36, tp. 9 south of range 17 east, Boise Meridian 1847 feet, running thence north twelve degrees fifteen minutes west one hundred and ninety-one and one-half feet; thence south sixty-three degrees and forty-eight minutes east, two hundred fifty-two feet to Snake River; thence south thirty-two degrees, thirty-six minutes west along the river seventy and two-tenths feet; thence south fifteen degrees west along the river, fifty feet; thence south twenty-three degrees, forty-five minutes, east along the river, fifty feet; thence north sixty-three degrees and forty-eight minutes west, one hundred and seventy-five feet to the place of beginning, as more fully shown on the plat of said premises hereto attached and marked Exhibit 'A,' and made a part hereof. That plaintiff also desires and proposes to construct the dams shown on said plat Exhibit 'A,' and to remove the rocks from Snake River at the point indicated thereon."

"VII.

"That the lands sought to be taken for public use are situated in the immediate vicinity of Shoshone Falls on Snake River, as shown on Exhibit 'A,' that it is the purpose and object of plaintiff to utilize the waters of Snake River for the purpose of creating and manufacturing electricity for public use as hereinbefore set forth. That said lands sought to be condemned are necessary for use in diverting the waters of said Snake River and in constructing tunnels, canals and conduits from said river to the buildings and structures used in creating and manufacturing electricity. That it is also necessary to place the dams in said Snake River as designated on Exhibit 'A' and to remove the rocks from said river at the

point thereon designated.  That it is the purpose and object of plaintiff to divert the waters of said Snake River by removing rocks therefrom and placing dams therein and by constructing a tunnel ten feet high and ten feet wide, as designated on Exhibit 'A' and by means of pipes and conduits therefrom to the power house of plaintiff to be located as shown on said Exhibit 'A,' and to equip said power-house with such machinery and appliances as may be necessary to create or manufacture electricity for the purposes hereinbefore set forth. That defendants have refused to grant plaintiff the use of the premises sought to be taken.

"Wherefore plaintiff prays that it be ordered, adjudged and decreed herein that the premises described in paragraph five hereof, be taken for public use, as claimed by plaintiff; that plaintiff may place dams as indicated on Exhibit 'A' and may remove the rocks from said Snake River as indicated thereon; that the damages for the taking of property herein be assessed, that the conflicting claims of defendants herein be determined and plaintiff prays for all proper relief."

The complaint closes with a prayer that the premises described therein and also indicated on exhibit "A" be condemned to a public use and that the damages therefor be assessed, etc. There is no question raised in this appeal as to any of the premises either described in the complaint or shown on the map which are situated in section 36, but it is contended that the description both as set forth in the respective paragraphs of the complaint and shown on the map confine the plaintiff's right or recovery exclusively to the lands situated within section 36, and that although the map shows certain dams to be constructed in the bed of Snake river across the township line and beyond the limit of section 36, that the court was without jurisdiction as against a defaulting defendant to enter a decree covering the dams shown by the map.  As will be seen from an examination of this map, it is drawn to a scale representing forty feet to the inch as shown by it.  It is also drawn to a north and south line as shown thereon, thus giving not only the scale but the angle to which the map is drawn.  While the bearing of each line is not marked on the map, nor is the

length of the lines marked thereon, it is a simple matter for a practical surveyor or engineer to take this map and ascertain therefrom both the length and bearing of each line as shown on the exhibit. Every line and point designated upon this map is capable of being definitely and certainly ascertained, and we must therefore conclude that the description and location of the premises as found upon this map falls within the maxim, *"Id certim est quod certum reddi potest."*

The most serious contention made by appellant is based upon the allegations of paragraph 3, wherein the plaintiff alleges that the premises sought to be condemned are located in section 36, and that therefore the allegations of the complaint as found in these respective paragraphs are at variance and in conflict with the description found upon the map, and that the description is therefore so uncertain as to amount to no description at all. We cannot agree with this contention. Uncertainty and ambiguity in a pleading can only be taken advantage of upon demurrer. It is only where there is a total lack of a necessary or material allegation that the defendant is justified in suffering a default and raising its insufficiency upon appeal; but where the allegation has been made and he attacks it upon its uncertainty or ambiguity, or the manner of making the allegation or language thereof, he must do so by proper demurrer.

In *Bates v. Babcock,* 95 Cal. 482, 29 Am. St. Rep. 133, 30 Pac. 605, 16 L. R. A. 745, the supreme court of California, in passing upon a question of this character, said: "It is only where there is in the complaint an entire absence of averment of a fact essential to a recovery, so that no evidence of that fact could be received at the trial, that a judgment in favor of the plaintiff cannot be sustained; but, if the objection be merely that such fact is defectively alleged, evidence received under such averment, if sufficient, will sustain the judgment. While the complaint in the present case is not entirely free from criticism, and might have been made more certain and precise in some of its averments, yet we think that it contains a sufficient statement of facts to justify the court in receiving evidence thereof."

The supreme court of California announced the same doctrine in *San Francisco v. Pennie,* 93 Cal. 468, 29 Pac. 66; *Schluter v. Harvey,* 65 Cal. 158, 3 Pac. 659, and *Garner v. Marshall,* 9 Cal. 269. The foregoing authorities are all cited with approval in *San Joaquin Lumber Co. v. Welton,* 115 Cal. 1, 46 Pac. 735, 1057, where the court holds that this rule is clearly applicable to a *defaulting defendant,* saying: "The line of distinction between an uncertain or defective averment of a material fact, and a total want of such averment, is well defined by the authorities, especially in this state; and it has been uniformly held that, if the defect in the averment be merely that of uncertainty, it will be waived by failure to demur, especially on the ground of uncertainty, and of course by default." (See, also, *Fudickar v. East Riverside Irr. Dist.,* 109 Cal. 34, 41 Pac. 1024.)

This court, in *Aulbach v. Dahler,* 4 Idaho, 654, 43 Pac. 322, said: "If the complaint was ambiguous, unintelligible or uncertain, the defendant should have demurred on those grounds. Having failed to do that, he waived all right that he may have had on those grounds."

But we are told that section 5216, Revised Statutes, is mandatory in its terms, and special reliance seems to be placed on the provisions of subdivisions 2 and 5 thereof. This section of the statute provides what a complaint in condemnation proceedings must contain, and the subdivisions cited as applicable in this case are as follows:

"2. The names of all owners and claimants of the property if known, or a statement that they are unknown, who must by styled defendants."

"5. A description of each piece of land sought to be taken, and whether the same includes the whole or only a part of an entire parcel or tract. All parcels lying in the county, and required for the same public use, may be included in the same or separate proceedings, at the option of the plaintiff, but the court may consolidate or separate them, to suit the convenience of parties."

A complaint in such cases must be in substantial compliance with the terms of these statutory requirements, but in ascer-

taining whether or not such requirements have been substantially met by the pleader, we apply the same rules and follow the same methods and manner of inquiry applicable in the consideration of the sufficiency of any other pleading. Applying those rules and principles, we therefore conclude that this complaint could not have withstood the assault of a special demurrer upon the grounds urged by appellant here, but appellant having allowed judgment to pass by default, and thereby admitting all the allegations of the complaint to be true, he cannot be heard to urge this uncertainty for the first time in this court. By his default he admitted the description contained upon the map and the allegation that he owned no interest in the properties described on such map as fully and completely as he admitted the allegations of the respective paragraphs contained in the complaint. (6 Ency. of Pl. & Pr. 115, and cases there cited.)

Considerable argument has been made upon this appeal as to whether or not the Snake river is a navigable stream and whether the court will take judicial notice of such fact, or if the same must be alleged and proven in the same manner as any other fact in the case. And following this argument the question has also arisen as to where the title to the bed of the stream rests, in case it should be held that the Snake river is a navigable stream. These are questions of very serious import, and concerning which the plaintiff may hereafter be called upon to meet, but they do not properly arise upon this appeal, and we therefore express no opinion concerning them. Suffice it to say that if it should be conceded that the Snake river is a navigable stream and that the title to the bed thereof is in the state, that fact could not concern the appellant and he could not be heard to complain of the same here.

For the foregoing reasons the judgment is affirmed, with costs to respondent.

Stockslager, J., concurs.

SULLIVAN, C. J., Dissenting.—I am unable to concur with my associates in the conclusion reached in this case. I am unable to find any allegation whatever in the complaint

where section 31, township 10 south, of range 17 east of Boise meridian is mentioned. It is on that section that the court, by its judgment, grants the right to construct dams and remove rocks.

In paragraph 3 of the complaint as quoted in the opinion of my associates, section 36 is mentioned three times, and it is mentioned the last time therein as follows: "That plaintiff is informed and believes and therefore alleges that the lands hereinafter described and sought to be taken for public use are within the limits of and are a portion of said section thirty-six, and that said state of Idaho is the owner thereof."

Could language be plainer? *We* think not. It is there alleged "that the lands hereinafter described and sought to be taken for a public use are within the limits of and are a portion of said section thirty-six, and that the state of Idaho is the owner thereof." There is no mention there of section 31. Paragraph 5 of the complaint contains the following allegations, to wit: "That the premises sought to be taken for public use are situate in Lincoln County, State of Idaho, and are bounded and described as follows, to wit." Then follows a description, by metes and bounds, of a tract of land in said section 36, containing sixty-seven hundredths of an acre, and after the description it is alleged as follows: "As more fully shown on the plat of said premises hereto attached and marked exhibit 'A,' and made a part hereof." It is there alleged "That the premises sought to be taken for a public use are situate in Lincoln County, State of Idaho, and bounded and described as follows." No other land is "bounded and described" therein except land situated in said section 36. It is true that in a separate and distinct subparagraph of said fifth paragraph of the complaint, and after the particular description of the land as given above, it is alleged as follows: "That plaintiff also desires and proposes to construct the dams shown on said plat exhibit 'A,' and to remove the rocks from Snake river at the point indicated thereon."

It will be observed from that allegation that the respondent alleges that he desires and proposes to construct the dams

shown on said plat, exhibit "A," and remove rocks from Snake river at the point indicated thereon. No allegation is made that respondent desires to take for "a public use" the land on which said dams are to be constructed or from whence the rocks are to be removed. No description is given whatever of the amount or area of land desired on which to locate said dams or the area of land from whence he desires to remove the rocks. It was just as necessary for respondent to describe the area of land desired for the dams and the area from whence he desired to remove the rocks, as it was for him to describe the sixty-seven hundredths of an acre of land on which he desired to place his power-house or other machinery. But the majority of the court would have us believe that only a line is needed on which to build a dam. I have always understood that it required some width of ground as well as length on which to erect a dam.

Referring to the sufficiency of the description of the land on which it was desired to build dams as it appears on exhibit "A," the opinion of the majority of the court says: "It [exhibit "A"] is also drawn to a north and south line as shown thereon, thus giving not only the scale but the angle to which the map is drawn. While the bearing of each line is not marked on the plat, nor is the length of the lines marked thereon, it is a simple matter for a practical surveyor or engineer to take this map and ascertain therefrom both the length and bearing of each line shown on this exhibit. Every line and point designated upon the map is capable of being definitely and certainly ascertained, and we must therefore conclude that the description and location of the premises as found upon this map falls within the maxim, '*Id certim est quod certum reddi potest.*'"

I have no fault to find with that maxim and concede that the length and bearing of each line marked on said map may be definitely ascertained by a competent engineer. But I do deny that an engineer, be he ever so competent, can from that map ascertain how many square feet or square yards or rods of land the respondent desires to use for the foundations of said dams.

Under the provisions of section 5216, Revised Statutes, the description of the land sought to be taken for a public use must be such that from it the number of square feet, yards or rods, or the number of acres may be ascertained therefrom. Those dams are to be built near the brink of Great Shoshone Falls, where immense volumes of water make a perpendicular leap of about two hundred and ten feet, and must have broad and strong foundations, and can they be built to withstand the mighty pressure thrown against them by a volume of water several feet deep and about one thousand feet in width, which is the volume of water passing there at the high stage of said river, without a broad foundation? Could those dams be successfully built on a line? I think not. A dam is now being put in said river some twenty or twenty-five miles above said falls; the foundation thereof is, I am informed, more than three hundred and fifty feet wide and said dam is many hundred feet long. Now, if we had the length of said dam, could we ascertain from that the area of land covered by that dam? I think not. Both in the findings of fact and judgment the court refers to the land on which dams are to be erected, but nowhere is the amount of land mentioned nor a description thereof given. In all probability no two engineers would agree on the amount of land required for said dams. Even if they did, the complaint must contain a description of the land to be taken for a public use.

As to the uncertainty of the description: There is no uncertainty in regard to the width said dams are to be built or the area of land required for them, as no allegation whatever of the width of said dams or of the area of land sought to be condemned for the foundations are contained in the complaint or indicated on said Exhibit "A." So, as I view it, the question of uncertainty or ambiguity of description does not arise in this case. There is a total lack of allegation, not a defective one, and for that reason the authorities cited on that point in the opinion of the majority have no application whatever. In the opinion of the majority it is stated as follows: "The complaint closes with a prayer that the premises described

therein and also indicated on exhibit 'A' be condemned to a public use," etc.   The prayer is as follows:

"Wherefore plaintiff prays that it be ordered adjudged and decreed herein that the premises described in paragraph five hereof may be taken for public use as claimed by plaintiff"; (It will be observed from a reading of said paragraph 5 that the only premises described therein is sixty-seven hundredths of an acre, and it is described by metes and bounds and is in said section 36.) Following the last word of the prayer above quoted, to wit, the word "plaintiff," is a semicolon, and after that the prayer is as follows, to wit: "that plaintiff may place dams as indicated on exhibit 'A,' and may remove the rocks from said Snake river as indicated thereon; that the damages for the taking of property herein be assessed, that the conflicting claims of defendants herein be determined and plaintiff prays for all proper relief."

It is clear to me from the language used there that the only land sought to be taken for a public use under the allegations and prayer of the complaint is the sixty-seven hundredths of an acre in said section 36. It is significant that wherever the "dams" are referred to in the complaint it is alleged that plaintiff also "desires and proposes" to construct dams as shown on said plat and remove rocks as shown thereon, giving no description of the area of land desired for that purpose, and does not state that he desires such lands for a public use.

The verdict of the jury clearly shows that in assessing the value of the area of land to be taken for a public use that all the land assessed by them was in said section 36.

The third and other finding of facts made by the court clearly indicate that there were three parcels of land referred to, and only one of the three were sought to be taken for a public use.   The third finding of fact is as follows: "That defendants [here naming them] have no right, title or interest in the premises sought to be taken for a public use," (here follows a comma), and the finding then proceeds, "in the land on which the dams are sought to be placed or in the land at the point where the rocks are to be removed from the bed of the river," etc.

If by the allegations of the complaint all of said land was sought to be taken for a public use, why was it necessary to refer to the lands on which it was proposed to place the dams and from which the rocks were to be removed separately and distinctly from those lands to be taken for a public use, as the first sentence of that finding declares "that the defendants have no right, title or interest in the premises sought to be taken for a public use"? I ask, why follow that with the sentence "in the lands on which the dams are to be placed or from whence the rocks are to be removed," if it was intended to take that for a public use? The judgment itself clearly indicates, to me, that it was only intended to condemn, for a public use, the sixty-seven hundredths of an acre of land in said section 36.

After the formal part of the judgment, it proceeds as follows: "It is therefore ordered, adjudged and decreed that plaintiff, H. L. Hollister, is entitled to take for a public use as specified in the complaint herein, the following bounded and described premises, situate in Lincoln County, State of Idaho, to wit": Here follows a description by metes and bounds of the said sixty-seven hundredths of an acre of land in said section 36. After that description and in a subparagraph, is the following, to wit:

"And that plaintiff be and he is hereby permitted to build dams as shown on exhibit 'A' attached to the complaint, a duplicate whereof is attached to this judgment and hereby referred to, and made a part hereof and also to remove rocks from the bed of Snake river at the point marked 'Rapids to be blown out,' on said exhibit 'A.'"

If it were intended to condemn for a public use sufficient area of land on which to place said dams, why did the court use the language last above quoted to wit: "He is hereby permitted to build dams as shown on exhibit 'A,'" instead of the language used in condemning the sixty-seven hundredths acres, to wit: "that the plaintiff is entitled to take for a public use" the land "bounded and described," etc., and then bound and describe it?

The three distinctions referred to have been carried all through the pleadings, finding of facts and judgment, to wit, the sixty-seven hundredths of an acre in section 36 was to be taken for a public use, condemned, and the other land referred to as that on which plaintiff "desires and proposes" to build dams and the land or bed of the river from which rocks are to be removed.

The judgment, as I view it, only authorizes the taking for a public use the land described as being in section 36, and a permission to build dams on and remove rocks from portions of section 31, without describing the amount of land on which a desire was expressed to build dams, and from which respondent desired to remove rocks.

Section 5211, Revised Statutes, contains a classification of the estates and rights in lands subject to be taken for a public use. The first subdivision is as follows: "1. A fee simple, when taken for public buildings or public grounds, or for permanent buildings, for reservoirs and dams and permanent flooding occasioned thereby, or for an outlet for a flow, or a place for the deposit of debris or tailings of a mine."

That subdivision provides that a fee simple title is taken when lands are taken for "dams," and on the oral argument counsel for respondent contended that the dams referred to in the complaint were not for the purposes of the dams mentioned in said subdivision of said section, thereby implying, at least, that the land or title described for the construction of said dams was more in the nature of an easement than a fee simple. And in my view of the matter, the complaint was drawn upon that theory and not upon the theory that a fee simple title was desired except for the said sixty-seven hundredths of an acre of land particularly described in the complaint. A dam being a permanent structure, a fee simple title must be taken to the land on which it is to be located. This fact further emphasizes the construction that I have placed upon the allegations of said complaint and the prayer thereof and the finding of facts made by the court and the judgment.

Section 5216, Revised Statutes, provides what facts must be stated in the complaint in a proceeding like that at bar.

"1. Must be stated the name of the one 'in charge of the public use' as the plaintiff.

"2. The names of all owners and claimants of the property if known, or a statement that they are unknown, and such parties are to be made defendants."

"5. A description of each piece of property sought to be taken, and whether the same includes the whole or only a part of an entire tract or parcel," etc.

It is alleged in the fourth paragraph of the complaint that appellants claim to be the owners of the lands thereinafter described "and sought to be taken for a public use," and the only description of any land in the complaint is that of sixty-seven hundredths of an acre, situated in section 36; and, of course, as appellants claimed no land in section 36, they did not appear. It is nowhere alleged that any land whatever in section 31 is sought to be taken for a public use and as said appellants are the owners of lands in section 31, and not in section 36, they failed to appear, as they had a right to do. It is not alleged in said complaint that appellants are the owners of section 31, or that the names of the owners are unknown. There is a total absence of allegation on that point. The complaint is fatally defective for that reason.

As to the provisions of the fifth subdivision of said section, there is no description whatever of the land sought to be taken for a public use for dams, nor does the complaint allege whether the land desired to be taken "includes the whole or any part of the entire tract." As before shown herein, the area of land required for said dams cannot be ascertained from exhibit "A," nor is there any allegation in said complaint that said plat is a correct plat or that it is drawn on a scale of one inch to forty feet. While there is a note of that kind on the map, is that a sufficient allegation that said map correctly describes the lands sought to be taken in section 31, and that it is drawn on a scale of one inch to forty feet? If all such allegations can be supplied by an exhibit, we had as well make all material allegations by exhibits and let the opposing party employ an expert to figure them out. The complaint is totally lacking in the allegations referred to.

In regard to Snake river being a navigable stream: I understand the doctrine in this country is that streams are navigable in law which are navigable in fact, and that actual navigability is a question of fact. If that be true, and the question of navigability is necessarily an issue in this case (and it was so treated by the court in its findings of facts), it must be alleged in the complaint, and it was not. Certain facts (of which the court may take judicial notice under the law) if necessary to a recovery in an action must be alleged in the complaint, and after making such allegations the party making them need not prove them, but the court will take judicial notice thereof.

The question arises whether Snake river is a navigable stream at the point where said dams are to be placed and rock to be removed. The said exhibit "A" indicates that that point is just above the brink of the Great Shoshone Falls, where Snake river is about nine hundred feet wide. At said falls the waters of said stream have a perpendicular drop of about two hundred and ten feet, and about three miles above and up the river from them are situated Twin Falls, where the waters of said stream have a perpendicular drop of about one hundred and sixty feet; thus within about three miles Snake river has a fall of about three hundred and seventy feet. Then will it be contended that that river is navigable at that point or would ever be made so? I think not. If it is not navigable the appellants own the land in section 31 to the point where the township line passes between said sections 36 and 31, and they should have been named as such owners in the complaint.

The facts above stated are a part of the history of this state and are significant in this case, and for that reason I refer to them.

It is admitted by my associates that this complaint could not have withstood the assault of a special demurrer and apply the same rule of construction as are applicable to pleadings in ordinary actions. I do not concede the latter proposition.

The statute, section 5216, provides what a complaint in a proceeding of this kind must contain, and unless it contains substantially every fact required, the court acquires no jurisdic-

tion over a defaulting defendant. And as the complaint failed to state the names of the owners of the land on which it was proposed to place dams and from which rocks may be removed, and failed to describe those lands, the court acquired no jurisdiction over the defaulting defendants and the judgment, so far as all land is concerned in section 31, is absolutely void.

In *Canyon County v. Toole, ante,* p. 561, 75 Pac. 609, which was a proceeding to condemn land for a public road, this court held that where the nonconsenting land owner failed to appear at the hearing, the board of county commissioners had no jurisdiction to hear the same unless the petition contained substantially a statement of all of the facts required by the statute in such cases.

So in the case at bar, as the statute declares what facts must be alleged in the complaint and it fails to contain them, the court acquires no jurisdiction of defaulting defendants, and in such case a judgment rendered therein is absolutely void. Facts required and not pleaded ought not to be placed therein by construction.

The judgment should be reversed.

ON REHEARING.

(June 17, 1904.)

STOCKSLAGER, J.—This cause was decided by this court and the opinion filed on the eighteenth day of February, 1904, at the same time Chief Justice Sullivan filed a dissenting opinion. On the eighth and ninth days of March thereafter, petitions for rehearing were filed, which were granted, and at a former day of the present term of this court briefs were submitted and oral arguments heard. Counsel for appellant Clark earnestly insists that the complaint is not sufficiently definite in the description of the ground sought to be condemned for the foundation of the weirs or dams. This question was argued both orally and in the briefs on the original hearing. The majority and minority opinions deal quite liberally with it, and we find no authorities cited or arguments submitted that changes our views as expressed in the opinions heretofore filed. It may be well to suggest that an inspection of the map

(which is copied in the opinion) answers the objections of counsel urged to its sufficiency of description. It will be observed that the locations of the dams or weirs are distinctly set out on the map drawn to a scale of one inch to forty feet. Two of them are to be four feet high, the third one three feet high; the width of each one is shown by two parallel lines drawn between the points to be connected, the space as shown between such lines being the amount of land condemned. As we view it, this map clearly and distinctly calls attention to just what plaintiff wants for the purposes set out fully in his complaint.

Mr. Mills, in his excellent work on Eminent Domain, under the head of "Description of Property to be Taken," at section 115, says: "Statutes vary greatly as to requirements of maps, plats and surveys and of the description deemed necessary in petitions. Plans must be intelligible and give angles, distances, etc., sufficient so as not to require parol testimony to explain the plan and scale of distances."

In what respect is this map deficient measured by this rule? We think it complies fully and completely with every requirement. Again, in the same section Mr. Mills says: "The actual contents of the tract taken need not be shown or set forth, if that is a matter of calculation from the length, breadth and course given." In what respect is this map deficient viewed in the light of this rule? In section 117, the author says: "Maps should be plain enough to be understood by a plain, ordinary man. A map means not only a delineation giving a general idea of the land taken, but also such full and accurate notes and data as are necessary to furnish complete means for identifying and ascertaining the precise position of every part with courses and distances, so that every part can be found." This last section is cited by counsel for appellant, and if it is to be accepted as the law to govern this case, we think is conclusive against appellant's contention.

It is urged that the court should fix the amount to be taken for the dams or weirs. We do not think it necessary, as the exact amount can be easily ascertained by a measurement of the space between the parallel lines as shown by the map.

Much is said in the brief of counsel for appellant and numerous authorities are cited bearing on the question as to whether Snake river is a navigable stream. The dissenting opinion also devotes some attention to the question. We are at a loss to know why this question should be urged at this time. The opinion distinctly states that the court does not consider that question at issue in the pleadings, and hence refuses to pass upon it, with the suggestion that it will be left for future litigation in case the parties should see fit to do so. The question of locating on the map the place where the rocks are to be blown out and removed presents a more serious question.

A more careful consideration of this question convinces us that the map is not sufficiently definite and certain in location and description in this particular to permit the blowing out of any rocks or the condemnation of any land for such purpose, and we think the judgment should be modified to this extent. Beyond this we see no reason for changing our views heretofore expressed in the opinion, except the costs of this appeal should be equally paid by the parties to the action, and it is so ordered.

Ailshie, J., concurs.

Sullivan, C. J., dissents.